Case number 231128 Amber Wenzel v. Phillip Tremonti et al. Oral argument not to exceed 15 minutes per side. Mr. Carl, you may proceed for the appellant. Mr. Chief Judge, and may it please the Court, good morning. My name is Brennan Carl, and I'm here on behalf of the appellant Amber Wenzel. I'll be reserving five minutes for rebuttal. Your Honors, this case is about a tectonic shift in Michigan law that occurred, and the fact that the District Court applied the wrong law when it granted summary judgment to dismiss Amber Wenzel's claims. Can I ask a threshold question on this, which I think has one slight complication to it? So as I understand the case, it somehow got divided up into ordinary negligence and premises negligence. Whether that was a good idea is not obvious to me, but I get the point, and I get that the District Court ruled separately on both. And I get the point that you could make the argument that the tectonic Michigan Supreme Court ruling is only premises liability. But there's a part of me that looks at that new decision, trying to make sense of it and figure out how it works, and says, we should just vacate the whole decision, the whole District Court decision, and let everybody start. I wouldn't call it square one, but reassess the motions for summary judgment in the context of that new decision. But that means vacating everything. Now, I assume that's good for you, because you lost on the ordinary negligence claim, so I can't imagine you're objecting. But I'm just curious, is that what you're asking? Is that what your initial point is? Your Honor, it would make sense, based on the magnitude of the change of Michigan law, to use just that approach, and thereby permit the parties. Well, why is it fair to the other side to vacate the ruling on, quote, ordinary negligence? Well, Your Honor, focusing in on ordinary negligence in particular, the District, it does present a unique issue, because the District Court seemed to treat it, ordinary negligence claim, like part of the premises liability claim, because the District Court applied... And I have to say, you guys seemed a little ambivalent about briefing that one. I mean, I personally think it's one claim. I don't understand how this got divided up, but anyway, keep going. So, focusing in on the ordinary negligence claim, the rationale for that is that there's a foreseeable risk of harm, based on Philip Tremonti's affirmative conduct, or active negligence. Like saying four seconds, five seconds? Slightly different, Your Honor, and that would be knowing how long it takes to get across safely, knowing that Amber Wenzel couldn't hold on that long when she did the test hold, and then still saying, you'll be okay, when viewing the law. Wouldn't that testimony, those facts, enter into the claim, if it was a premises liability claim? And vice versa, all the evidence in premises liability, wouldn't it be admissible in the so-called ordinary negligence claim? I'm so puzzled how this happened. Your Honor, although... The duties are different, right? I mean, the rules of liability are different. That is correct. When I say active negligence, Michigan law is looking at, one, a duty that's owed for a premises liability. Michigan law is looking at a duty that's owed based on someone coming onto another's property. Distinctly, there's a duty owed when someone makes some affirmative action that then gives rise to a foreseeable risk of harm. And so... And in that claim, you ignore why they were standing there and how they got there, whether they paid or whether they were a social guest. Your Honor, I think for the reason that that claim matters, it mattered especially under the previous paradigm, which has been overturned, due to the application of open and obvious to a premises liability claim, which would not be applicable in an ordinary negligence claim. I'll add that Michigan has recognized that there's a... When one is engaged in a recreational activity, such as ice skating, where someone skated backward into another ice skater, or in golfing, where one golfer in a golf cart hit another. In those circumstances, there's not the issue about the premises. That doesn't come up because the plaintiff is seeing a defendant who didn't own the property where this occurred. So the duty arose based on engaging in the recreational activity. And there... No, but am I missing something? I thought the bad advice was from the owner. It's true that it was from the owner. It's also true... But under Michigan law, the reason for the premises liability framework is that there's a duty owed just based on being a landowner. But when you take some active step, when you do something else, that exposes... It's reasonably foreseeable that you'll expose another to some risk of harm. Then that imposes a new duty, a distinct duty on you. And it's a different duty. And so not only... One basis was the duty that arose based on Philip Tremonti's knowledge about how long it would actually take to get across safely versus how long... Let me... So that was very helpful, but now let me try to flip it a little bit. Let's put ordinary negligence aside. Think of it in terms of premises liability. And imagine now that we want to apply the Michigan Supreme Court decision. Okay, so let's... What should we do? In applying the Michigan Supreme Court decision, first of all, there would be a duty here. Focusing on the premises liability claim in particular, the duty would exist and it would be that... And since there is a commercial purpose, it's a duty that's owed to an invitee. So inspect and make safe. But the key here is that then that means first, summary judgment was not appropriate. And second, evidence about how open and obvious this type of... The zip line hazard was, that type of evidence actually goes to show then comparative fault. And so that is, especially under Michigan law, something that's reserved for the fact finder. Are you saying under this new Supreme Court case from the Michigan Supreme Court, you could never grant summary judgment on a premises liability case involving an open and obvious danger? No, Your Honor. I'm not saying that. And in fact, the Michigan Supreme Court during argument asked that very type of question. Then why aren't we back... The distinction is that one, looking at the elements, we're beyond duty and now we're to breach. That's significant because... You still grant summary judgment on breach, can't you? Yes, Your Honor. So why isn't Tremonti entitled to summary judgment on breach? First, because there's a genuine dispute about whether she really understood the risk and appreciated it, given that she was told, you'll be fine by someone, Philip Tremonti, who knew because of the wedding guests in 2019 who had used the zip line and because of the people who had used the zip line that very day, how long it really took to get across. He also knew... Isn't it undisputed that she did know that it would take five seconds to get across? Didn't she say that in her deposition, essentially? At this stage, at the summary judgment stage, viewing the light most favorably toward Wenzel, since there's some, I'll say, testimony that you could argue about whether or not it... Fundamentally, viewing it in light most favorable to Wenzel, she understood that she would be fine because she was told by someone who knew the most about... Doesn't she know the most about her capabilities, given that it's her? He doesn't really know what her capabilities are, does he? I see my time is up, but if I may answer... Why don't you answer that, and then we'll give you your full rebuttal. This creates the type of genuine dispute that I think warrants presenting this to a fact finder to resolve. Okay, thank you. Here from the other side. Good morning. Good morning, your honors. May it please the court. Ryan Kaufman on behalf of the appellee. Do you have a view on this threshold idea that we... Go ahead. I do have a view, and I was going to start exactly there, so thank you for the question. In my view, as we got to near the end, there's just no genuine issue of material fact, even under this new framework, that there was ever a breach of any duty by the Tremontis. And so that's... You don't need any more discovery or evidentiary... Don't need to brief it again? ...to address this new case. You have all the facts you need to address the new legal standard. We do, your honor, and I think in our briefing we even anticipated where this... I accept that, but am I right in thinking this is an unusual approach to premises liability? In other words, Michigan's not following the restatement. I don't know if any other states do this approach. So it's a part of me that's a little wary about jumping into it. I accept the point. You can still have rulings as a matter of law and breach. I appreciate it. They can even grow out of open and obvious. But it still does strike me as potentially quite unusual and therefore potentially likely to lead to unusual approaches to premises liability claims. And let me just clarify your question so I understand. You're saying that the approach under this new framework that the Michigan Supreme Court has recently adopted is a little bit unusual compared to how... Other states do it? Other states do it. Does it? And why do we jump into the deep end quickly as opposed to letting it go back and get the district court's input first? Maybe there will be some state court rulings before long? Sure, sure. And there have been some state court rulings in the interim. I've seen a few unpublished cases, and I've even seen unpublished cases deciding this issue on breach alone. I have not seen very many published cases from the Court of Appeals because it is a short period of time. Have you seen a case that grants summary judgment to a defendant on the breach issue? I have, and I've got a case. I can set it for the record. It's an unpublished case dated October 19, 2023. To kind of confirm my point, this isn't in the briefs. No, no, it's not. It is very recently. I haven't had a chance to brief it, so tell us this.  But just for the record, it is case number 336159 of the Michigan Court of Appeals. It's Cunningham v. Inland Pipe Rehabilitation Holding Company. I'm sorry I don't have the Westlaw site, but I hope your clerks can find it on that information. But what I would say, to your point, Judge Sutton, before we even get to this new framework, I think it's important to look at what was Ms. Wenzel's status on the property at the time she entered into the property because we said she's a licensee. I just want to ask one more question about this, and just how comparative negligence works. I take it it's true that Ms. Wenzel could win on breach and get some damages even if the jury found she was 95-99% negligent. Is that true? Just say yes or no. I just want to understand how comparative negligence works. She could get her economic damages if she's... She would lose her non-economic damages if she was more than 50% at fault, but she could get some damages, correct? Even if she's 95-99% at fault? If she was 95% at fault, she could get 5% of her economic damages. But not her non-economic. She would lose her non-economic damages being more than 50% at fault by statute in Michigan. That's what makes it seem hard to me. I get the idea in the abstract you can have summary judgment, but this looks like a situation where even if I look at it your way, I probably would still say, well, she just has a lot to do with this. It's not exclusively everything to do with this. I would point out two things, I suppose, in response to that observation. One, I would say first she's a licensee, and I think she's a licensee under the case of Stitt v. Holland, Abundant Life Church, as cited in our brief. But you'll recall she and her friends were renting the apartment. Just so I understand, Michigan Law, you call licensees social guests? Social guests, correct. What's going on in Michigan tort law? Is this all growl out of cooey or something? I don't know what is going on. Everything you're doing doesn't make any sense to me. Why wouldn't you call a social guest an invitee? Just help me. No, no, licensee, I'm sorry. I know. I'm telling you it doesn't make any sense. Okay, so social guests, I'll use that phraseology. Trespasser, social guest, invitee. Those are the three common law classifications of a visitor to a property that Michigan recognizes under the common law under the second restatement and was reaffirmed in this recent case from the Michigan Supreme Court. Okay, so those classifications still exist. Somebody is a social guest if the person is just asked to come to the property without a direct business purpose. And in the case of Stitt v. Abundant Life Church, the Supreme Court looked at Section 332 of the restatement. And if you look at Section 332 of the second restatement of the law, it says, and I'm paraphrasing, but an invitee can be somebody who goes onto a property that's held open to the public or if it's directly or indirectly related to a commercial purpose. And what the Michigan Supreme Court said in the Stitt cases, no, somebody who just comes on for a commercial property that's held open to the public, it's not enough. It has to be directly tied to a commercial purpose. And that was the explanation the Supreme Court gave in Stitt. Here, at most, we have an indirect tie to some commercial purpose because she's renting the property next door. The Tremontis allow Wenzel and her friends to come over to their own personal property and to use the zip line. They've only done this one other time for the 100 guests that they've rented the residential property for. So it's not part of their business model. It's not something they do every time. It's not something that's advertised. And Wenzel and all her friends agreed, something they never even knew about until they showed up that day. Wenzel even agreed that if Mr. Tremonti had said, hey, I'm revoking my invitation. I'm not going to let you guys come over. I've got to go do something else. She would have no recourse. It wasn't part of her contract. Now, the district court said, well, it's not hard to see that maybe this builds some goodwill. Maybe they come back next summer. Or maybe they leave a favorable review on VRBO. But that's an indirect benefit. And under Stitt, that's not enough. It has to be directly tied to the commercial activity. And it's just not here. And so if she's a licensee, a social guest, we don't even get to this new case law. Because the case law regarding social guests in Michigan has not changed and is very, very clear. You take the properties, you find it. And this is how the Tremontis used their zip line, so you could glide down and drop into the pond if you wanted to. That's how she took it. And so that's the easiest way out of this case. Remind me what the district court's view of this point was. What did the district court say? Well, she said there's a question of fact. But I think she mistakenly said a question of fact. She didn't apply the law. And I think she did that because it was so clear that it was open and obvious. And I don't want to fault the district court, but there is no factual dispute. We took every single piece of testimony, as Ms. Wenzel said and as her friend said, in the light most favorable to the plaintiff. It's simply this legal holding under STIT. If all of that's true, on remand she'll say it's a social guest. Perhaps she will. But I'm trying to maybe short circuit because I think the record is complete and I think this court can make its own determination that the district court reached the right result for the wrong reason. And there's enough in the record for this court to determine that she was, in fact, a social guest under the holding of STIT, the Michigan Supreme Court case. And again, if she is a social guest, that's it. But if you disagree with me and we go to the new framework under the new case, we still have a case where the district court reached the right result for the wrong reason. She decided on duty based on the old case law, but reasonable minds cannot differ. In this case... She was 100% at fault? 100% at fault because she assumed the risk. She did this for the very purpose of using the activity. Now contrast this to a situation like the... She was hesitant. She wasn't like all in, where are the zip lines? I'm a zip line person. She was pretty hesitant here. She was, and her friend said, hey, do it. It's a lot of fun. It's exciting. She saw three people use the zip line before she did it. Mr. Tremonti said in his deposition on rebutted testimony that over 200 people had used it before plaintiff. Nobody had ever been injured before. So there was no, this isn't a... I mean, all of that would maybe make sense if he didn't do that little exercise with her. But then aren't we back to whether there's a special relationship that would create a duty in Mr. Tremonti to, I guess, not encourage her while she's thinking about whether to use the zip line or not. Doesn't duty come from a special relationship? And here, there is no special relationship between Mr. Tremonti and the Wenzel. If two people are standing on a ledge, a rock quarry, it goes down to some water, and one friend dares the next, hey, why don't you jump in there? That looks like fun, and he does it. Is that a tort? Is there a special relationship? Is that a separate duty to not double dog dare somebody to do something that maybe they get injured after they do it? I would suggest it's not, and I think that's pretty clear under the case law and really longstanding principles of tort law. And so this whole idea of whether he encouraged her or not seems to be a bit of a red herring. It's really that she assumed the risk. This is no different than sitting on the first baseline at a baseball game. You know a ball might come your way. It's engaging in recreational activity for the very purpose of experiencing the challenge and the fun and the thrill of doing it. This is not walking across the snowy parking lot knowing that it's covered with ice and snow, but you have to get into the attendant's office to pay because you just pumped your gas. You don't want to walk across the snowy parking lot. That's referring to like an anticipation issue, whether you can anticipate a danger. And that's the way I've been kind of looking at the case, is that is there something that Tramonti could have anticipated as far as danger that she didn't know about? And there's not because just by looking at it. But is that the way to look at it? I think so, Your Honor, and I think that's exactly it. Because I'm not coming up with anything that he knew that she didn't know that related to the danger that was posed to her. You just hit the nail on the head, Judge. There is absolutely nothing about this that he knew that she didn't. In fact, she had more knowledge because she knew her own physical limitations and abilities. She saw three people do the zip line. That's all you need to know. You can see one person do it or a thousand people do it. You're not going to learn any more about this zip line. And you've included videos on how they worked. I mean, you can see it for yourselves. You watch it once. You know exactly how this works. You have to hold on all the way over the pond to the end of the platform. Can I go back to the social guest thing? And maybe this is answered in this, I think you called it, stiff case. Yes. Does Michigan, they look at that as a fact question or a legal conclusion? It's typically a legal conclusion. The status, whether somebody's an invitee or a social guest, is a legal conclusion. Unless, of course, there's a question of fact. Plaintiff says, hey, I was invited over there and I was going to pay money or something. But it is a legal conclusion based on the record. Remind me what Judge Jarboe said was the disputed fact that went to this dichotomy. With all respect to Judge Jarboe, I don't think he identified it very clearly. So you just thought she was ruling on alternative grounds, really? I thought she was rushing to get to the open and obvious issue. I think she thought significant the fact that they could have, like, the review, I think, maybe, was the fact that you could have later been influenced to say something good about them, that that was the... She did say something that affected. I think her words, if I recall, were, you know, it's not hard to see that, you know, there might be some good reviews or something like that. That's not a fact dispute. No, no, no. That's a thing that enters into the legal conclusion. That's exactly right, and that's exactly why I'm faulting Judge Jarboe for that. And I believe this is... Saying that's not enough as a matter of law. That's not enough as a matter of law under the Stitt case, because it's an indirect benefit, and it's not directly tied to the commercial purpose. That's the distinction, again, that Stitt... Well, it's directly tied to the fact that they're paying money to rent the place. Sure, but they didn't have to come over, and Mrs. Tremonti didn't have to invite them over. It wasn't part of the rental agreement. It wasn't on the VRBO webpage. Right, that's a fact, but it was still in relation to the rental agreement. If they would have never... If Plaintiff and her friends would have never rented the property, they would have never been there, and they would have never met them, I guess we can go down that road forever, but it's not directly tied to the commercial purpose. It wasn't like, hey, rent our property, and as part of that, you get one day where you get to come over here on our property and use the zip line. Everybody agrees that's not the truth. I've got a different question.  The arguments on the negligence, on the pure negligent claim, that focus on what Tremonti did to encourage her to take a ride, was that addressed below? It was, Your Honor, and I'm just about to wrap up here, but I just stopped it. But it is addressed. It was addressed in both the briefing by both parties, and I believe Judge Gerbeau even talked about it. Our position below was there's simply no special relationship that would prevent Mr. Tremonti from encouraging her, saying, you know, you can do it, this is fun, or from her friends saying, hey, I just did it, it was fun. Ms. Wenzel still knows her own physical limitations. She still has to make the choice for herself, and so I just ask that you affirm. Thank you, Your Honors. All right, thank you, Mr. Kaufman. Mr. Carl, you get your rebuttal. First, Your Honor, STIT is distinguishable, because in that case, it was in the context of religious services, and the fact that there wasn't this commercial purpose tied to attending a religious service. Here, totally different situation. Rental property, we have testimony that this was to enhance the guest's experience, and this certainly had a close nexus or tie to the commercial purpose of the Tremontis and renting out the property to guests and trying to get favorable reviews. But I think in any event... But it's funny that they've got this motive of favorable reviews, and it's never affected them. It's only one other time, and that one didn't look very commercial. I mean, so I don't know. There's... At this summary judgment stage, we're looking at the evidence and viewing it in the light most favorable to Wenzel. And based on what we have there, the evidence is that, in fact, this was done for commercial purpose. Now... You think it is a legal conclusion, but you... It's a legal conclusion for the court, but it could be affected by disputes of fact. Now, I wouldn't call the dispute of fact the possibility of liking favorable reviews. I think it's just a function of how much that could enter into it. Right? There's no fact dispute there. It could be a positive. It hasn't historically motivated them because they've done this so infrequently. Well, what's the other dispute of fact that goes to whether they're social guests? The... Our position would be that they were there on... The only reason that Wenzel and her friends were ever invited to the Tremonti's property was to use the zip line because they were renting and because the Tremonti's wanted... So it's a but-for. But for the commercial relationship, we would never have this possibility. And naturally, that ties into the commercial purpose motivating the Tremonti's. But the district court, frankly, just didn't need to decide that and so left it sort of open, leaning toward invitee and commercial purpose, but left it open because, ultimately, there just wasn't a duty, according to the district court. Of course, Michigan law has changed. The open and obvious doctrine doesn't negate duty anymore. And so, as a result, we're now in a situation where there is a duty owed and that is an important determination for the premises liability claim. So it would be appropriate for the district court to determine that now and not just leave it open. Also, Wenzel was not 100% at fault, but that balancing a proportionate fault is exactly the type of function for the jury to fulfill. And that's another reason to reverse the district court's grant of summary judgment in this case. And then, as far as Judge Bush, I think you asked a question, focused more on whether Wenzel could anticipate the danger to the same degree as Philip Tremonti. She couldn't. Based on the evidence viewed in light most favorably to Wenzel, there was some special knowledge that Philip Tremonti possessed by virtue of having himself removed the safety harness and braking system, himself installed the zip line the way that he did, having seen so many people use it, and still telling her, even though she was scared and very hesitant to go at all, teetering on not going, he gave her that verbal push. He told her, you'll be fine, go. But all the times that he had seen that she had not of the zip line in use, no one had ever fallen. So I would think that fact would show that he might have thought there was less risk than she might have thought, given that she had less experience of seeing people successfully use the zip line. First, Your Honor, I think that this illustrates why it's the type of thing that creates a genuine dispute for the fact finder. But secondly... I don't understand how it cuts in her favor, though. Because she's relying... She trusts... The theory is she trusts that Philip Tremonti, since he has all this experience watching people use it, knows best. I mean, if you'd seen someone fall, yes, I agree with you. But it's the fact that no one fell, it seems like that's a fact that's really immaterial here to the analysis, because to the extent it's material, it would be in his favor, not in hers. Your Honor, my time has expired my answer. It's because... Precisely because no one has fallen, Philip Tremonti seems to be the overseer of the zip line who is in a special position based on this type of activity, who has the specific experience with it, to know that she's going to be okay. Thanks very much. Thanks to both of you for your helpful briefs and for answering our questions at argument, for which we're always grateful. Thank you. The case will be submitted, and the clerk may call the last case.